# EXHIBIT A

**KALIELGOLD PLLC**
Sophia G. Gold (SBN: 307971)
sgold@kalielgold.com
Amanda J. Rosenberg (SBN 278507)
arosenberg@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

*(additional counsel on signature page)*
*Attorneys for Plaintiff and the Putative Class*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**03/05/2026**
**Clerk of the Court**
BY: DAEJA ROGERS
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN FRANCISCO

**CGC-26-634729**

| | |
|---|---|
| IAN COMFORT, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>APPFOLIO, INC.,<br><br>    Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ian Comfort ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant AppFolio, Inc. ("Defendant" or "AppFolio"), and states:

### NATURE OF THE ACTION

1. There is a cost-of-living crisis in our country, one that is especially acute in the housing market. One reason is the relentless imposition of add-on fees in excess of advertised rental rates—including "pay to pay" fees like those at issue in this Complaint, wherein consumers are charged add-on junk fees by third party middlemen merely for doing what they are required to do under the terms

CLASS ACTION COMPLAINT

of their residential leases: make their rent payments.

2.    Plaintiff brings this putative class action lawsuit seeking monetary damages, restitution and public injunctive relief arising from Defendant's deceptive and unfair imposition of junk "Transaction Fees" on rent payments completed through Defendant's online platform.

3.    The Transaction Fee is added at the very last step of the checkout process, using a "negative option" process. This process—condemned by the Federal Trade Commission ("FTC") as inherently deceptive—automatically lards online checkout flows with supposedly optional junk fees, then forces consumers to find a way to remove them. Worse, Defendant provides no fair disclosure on how to remove the add-on fees.

4.    Defendant's fee is a classic example of a company-imposed "junk fee" that serves solely as a profit generator for Defendant while providing no added value to consumers.

5.    Defendant's Transaction Fee is deceptive because Defendant does not inform consumers that they are subject to this additional fee that, in fact, is not permitted by their residential leases.

6.    Indeed, the Transaction Fee amounts to additional, unexpected rent for tenants that is undisclosed in lease agreements. Defendant's knowing and intentional imposition of Transaction Fees over and above the contracted-for rent constitutes a tortious interference with contract.

7.    Plaintiff and Class members are injured by Defendant's deceptive, unfair and illegal practices. Plaintiff brings this action on behalf of himself and a putative Class and seeks actual damages, restitution and injunctive relief on behalf of the general public to prevent Defendant from continuing to engage in its illegal practices described herein.

## PARTIES

8.    Plaintiff Ian Comfort is a citizen and resident of San Francisco, California. At all relevant times alleged herein, he was a tenant of a property in San Francisco, California and was assessed a Transaction Fee for paying rent payments through AppFolio's platform.

9.    Defendant is a Delaware corporation headquartered in Goleta, California. Defendant provides property management software and services in the real estate industry. Defendant offers

2

CLASS ACTION COMPLAINT

several products to residential and commercial clients worldwide, including an online rent payment portal.

<b><u>JURISDICTION, VENUE AND GOVERNING LAW</u></b>

10.     This Court has jurisdiction over Defendant and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10 because this case is a cause not given by statute to the other trial courts.

11.     Plaintiff is informed and believes that the State of California has personal jurisdiction over Defendant because Defendant is a corporation authorized to conduct and does conduct business in this State. Defendant maintains its corporate headquarters in California and is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market by conducting business throughout California, including in the County of San Francisco, which has caused both obligations and liability of Defendant to arise here.

12.     Venue is proper in this Court as relevant transaction(s) occurred in this County.

13.     Unless otherwise alleged herein, each of Plaintiff's claims brought on behalf of the Nationwide Class are governed by the laws of the State of California because Defendant's misconduct emanates from its corporate headquarters in California.

I.     **FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

A.     **Overview of AppFolio**

14.     AppFolio contracts with property management companies throughout the country to provide various marketing, leasing and resident services. Defendant's services include providing an online payment processing platform for collecting rent payments from consumers.

15.     In 2025, AppFolio serviced approximately 9.4 million rental units and 22,096 customers.[1]

---

[1]https://finance.yahoo.com/news/appfolio-q4-earnings-call-highlights-235532753.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAF6q6sJEUOqyjE6zpSIEceKa5Lfc8X8WFlClyHxHW7ZzWW01Ib7DmA6-

CLASS ACTION COMPLAINT

16. Defendant's online payment processing platform is how Plaintiff and Class members paid their rent and were assessed the Transaction Fee.

17. Consumers making their rental payments through Defendant's platform are automatically charged the Transaction Fee and are not informed of the amount Defendant charges for the Transaction Fee until the final "Confirm" payment screen.

18. At no point during the rental payment process are consumers informed of alternative means to pay their rent to avoid the Transaction Fee, leading consumers to believe the fee is mandatory and unavoidable.

19. This pre-selection and automatic opting-in of consumers to junk fees is itself deceptive.

20. Defendant's inadequate and untimely disclosure of the Transaction Fee, as well as Defendant's failure to adequately inform consumers of alternative ways to pay their rent to avoid the Transaction Fee, render the Transaction Fee nothing more than a junk fee couched in an unlawful pay-to-pay scheme.

21. Upon information and belief, Defendant is aware that, by programming its online payment platform with a "negative option" to automatically opt-in consumers to pay Transaction Fees, it ensures that most consumers will unknowingly pay them. On information and belief, Defendant is further aware that, had it programmed its online platform to offer an *optional* Transaction Fee (requiring an opt-in or providing fairly disclosed options to remove or avoid such fees), the vast majority of consumers would not pay the Transaction Fee.

22. As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or

8q0EmiK89qHElGFD4HDqIqCx7HQp26KPN71bnwhSHn4CQnpsltugOUZJDTdArCkhDwekOjlG
1SJULOtg3ajYPMe9r0xVlFcnm2950pwpWvA2zLaVnRcp.

CLASS ACTION COMPLAINT

data."[2] The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that "[a] 'pre-checked box' does not constitute affirmative consent."[3]

### B.     The Rise of Junk Fees in Renting

23.     The proliferation of rental housing junk fees like Defendant's Transaction Fee has negatively impacted millions of renter households nationwide.[4]

24.     Additional, undisclosed fees tacked onto rent payments pose a real threat to consumers' financial stability, particularly considering that they force tenants to spend significant and unbudgeted sums of money each month on top of rent.[5]

25.     "Commonly referred to as 'junk fees', these [Transaction] fees can be undisclosed, unpredictable, and arbitrary and can quickly accumulate for tenants, putting safe and decent rental housing even more out of reach."[6] These "surprise fees are imposed for services with little to no value," and "add up quickly, rendering advertised rental prices inaccurate and sometimes forcing tenants to spend hundreds of dollars each month on top of rents."[7]

26.     In 2022, the National Consumer Law Center ("NCLC") conducted a survey of legal services and nonprofit attorneys throughout the country which examined various types of rental junk fees charged to renters in the rental housing market.[8] The survey revealed that 60% of respondents

---

[2] *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers,* Sept. 15, 2022 (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

[3] https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

[4] *"What the Heck, Dude!"*, *How States Can Fight Rental Housing Junk Fees,* National Consumer Law Center, Sept. 2024, available at https://www.nclc.org/wp-content/uploads/2024/09/202409_Report_What-the-Heck-Dude.pdf at pp. 5-7.

[5] *Junk Fees Toolkit*, National Low Income Housing Coalition ("NLIHC") State and Local Tenant Protection Series: A Primer on Renters' Rights, available at https://nlihc.org/sites/default/files/2022-07/SLI_Rental_Fees_Toolkit.pdf at p. 7.

[6] *Id.* at p. 3.

[7] *Id.* at p. 6.

[8] *Too Damn High, How Junk Fees Add to Skyrocketing Rents*, National Consumer Law Center, Mar. 2023, available at https://www.nclc.org/wp-content/uploads/2023/03/JunkFees-Rpt.pdf.

CLASS ACTION COMPLAINT

from 23 states observed convenience fees, and that "[s]ome housing providers no longer accept payment in person or by check, meaning that tenants have to pay their rent online," and often times, must do so "through third-party companies," like Defendant, "that charge fees."[9]

27.    Defendant's failure to include its rental junk fees in the total cost of the advertised monthly rental rate is problematic—"While a renter may be able to manage and plan for high rents if they know about them in advance, they may not be expecting an array of junk fees, which could push them over their budgets."[10]

28.    Indeed, the FTC recently issued a warning to rental management software companies, including Defendant, that its practices may be unfair and deceptive. Specifically, the FTC stated:

> The FTC is committed to rooting out anticompetitive, unfair and deceptive acts or practices in the rental housing market. Consumers who search for potential rental housing units cannot meaningfully compare alternative choices without understanding the total price required to rent the advertised properties. When consumers do not know the total price of the advertised properties—or any product—they cannot make informed decisions, and the market cannot operate as efficiently as it otherwise would. And unfair and deceptive acts in the rental housing market in a time when hard-working Americans continue to suffer the effects of the Biden Administration's cost-of-living crisis are especially harmful to consumers and markets.
>
> Available information suggests that property management software providers are limiting the ability of rental property managers and owners to accurately advertise the total monthly rental price, inclusive of all mandatory fees. Property management software programs may cause consumer harm and harm to competition in the rental housing market when they do not accurately display complete pricing information across websites hosted on their platforms, or where they restrict property owners' and managers' ability to aggregate or convey accurate cost information to consumers on third-party listing sites.[11]

---

[9] *Id.* at pp. 17-18.

[10] *Id.* at p. 6.

[11] *See* **Exhibit 1** (footnotes omitted).

CLASS ACTION COMPLAINT

29. Thus, the FTC warned property management software providers, including Defendant, to comprehensively review their practices to ensure consumers are provided "with transparent rental prices."[12]

30. But Defendant's Transaction Fees impede that effort.

31. The consequences of these junk fees are significant. As a leading player in the third-party rental payment processing industry recently acknowledged in a July 31, 2025, blog post, "[a]lmost half (49.7%) of renters spend over 30% of their income on housing, and nearly a quarter are severely burdened, paying more than half. That's a lot of people and money. The overall cost of renting, including utilities and other basic housing costs, has increased by 3.8% year-over-year—the largest annual real increase in rental costs since at least 2011. That, alongside an increase in grocery, gas, and utility expenses, makes it nearly impossible to have any financial breathing room—but rent waits for no one. Unfortunately, this could mean late fees, overdraft charges, or even falling behind on rent."[13]

32. Despite the financial hardships consumers face in order to meet their monthly rental obligations, Defendant nevertheless charges these same consumers a Transaction Fee to make their monthly rental payments.

**C.     Defendant Charges Consumers Transaction Fees for Processing Rent Payments**

33. Defendant charges consumers a pay-to-pay Transaction Fee on rent payments in an amount beyond the price of consumers' monthly rent obligations.

34. Defendant's Transaction Fee is deceptive because Defendant does not inform consumers that it is charging a fee that is not already included in their residential leases, nor does it inform consumers that the fee is not permitted by their leases.

---

[12] *See id.*

[13] https://www.rentcafe.com/blog/apartmentliving/tips-tricks-renters/managing-flexible-rent-payments/ (last accessed Feb. 1, 2026).

CLASS ACTION COMPLAINT

35. Defendant's Transaction Fee is not tethered to any actual processing or expense, nor does it constitute any service that is not reasonably already included in a residential lease, *viz.*, the ability to make a payment under that lease. Instead, the fee is a pure profit generator for Defendant.

36. Reasonable consumers like Plaintiff understand the advertised cost for monthly rent to be the total cost of their rent obligation as represented—not the total cost of monthly rent *plus* an additional, undisclosed charge. In other words, Defendant's Transaction Fee amounts to additional, unexpected rent for tenants over and above the amount they contracted for.

**D.     Defendant's Transaction Fee is a Junk Fee that Violates Federal Guidance and State Consumer Protection Laws**

37. Defendant's Transaction Fee is precisely the type of "junk fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.[14]

38. As the Federal Trade Commission said recently in its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.[15]

39. In a press release, FTC Chair Lina M. Khan has articulated the financial harm to consumers arising from fees like Defendant's:

> It's beyond frustrating to end up spending more than you budgeted because of

---

[14] The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, Mar. 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/.

[15] Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

CLASS ACTION COMPLAINT

random, arbitrary fees. No one has ever felt that a "convenience fee" was convenient. Companies should compete to provide the best quality at the best price, not to see who can squeeze the most added expenses out of consumers. That's especially true at a time when families are struggling with the effects of inflation.[16]

40.    In July 2024, California expanded its Consumers Legal Remedies Act ("CLRA") by amending to make "drip pricing" illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. Cal. Civ. Code § 1770(a)(29). Under the new California law, dubbed the "Honest Pricing Law," it is now illegal to advertise a price for a product, only for that produce to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay."[17] As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.[18]

41.    Despite the decision to codify of the Honest Pricing Law, the California legislature acknowledged in the preamble to the Honest Pricing Act that "drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service[,]" "like other forms of bait and switch advertising**, is prohibited by existing statutes, including the [UCL] and the [FAL].**").[19]

42.    Defendant violates federal guidance and state consumer protection laws by charging the Transaction Fee for processing rent payments on its platform.

---

[16] Federal Trade Commission, <u>Federal Trade Commission Explores Rule Cracking Down on Junk Fees,</u> Oct. 20, 2022, available at https://www.ftc.gov/news-events/news/press-releases/2022/10/federal-trade-commission-explores-rule-cracking-down-junk-fees.

[17] *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions,* available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed Mar. 3, 2026).

[18] *Id*. at p. 4 (emphasis added).

[19] 2023 Cal. Legis. Serv. Ch. 400 (S.B. 478) (emphasis added).

CLASS ACTION COMPLAINT

### E.    Plaintiff's Experience

43.    Since approximately August 2021, Plaintiff rented an apartment in San Francisco, California and pays his rent each month via automatic payment from his bank account through Defendant's online platform.

44.    When Plaintiff first set up his automatic payment through Defendant's online platform, he was not charged a Transaction Fee. However, beginning July 31, 2023, Defendant unlawfully charged him with the Transaction Fee without obtaining affirmative consent to do so.

45.    For example, on September 1, 2025, Plaintiff automatically paid his monthly rent and was charged a $2.49 Transaction Fee from Defendant. This Transaction Fee was automatically added to Plaintiff's total.

46.    Plaintiff reasonably believed the fee was a mandatory fee that he was required to pay in order to pay his monthly rent on Defendant's platform.

47.    At no time during the payment transaction did Defendant adequately or transparently present the Transaction Fee as an optional charge.

48.    Plaintiff relied on Defendant's misrepresentations and omissions about Defendant's Transaction Fee in making his rent payment.

49.    Had Plaintiff known that he would be charged a useless Transaction Fee for making his rent payment, or that the fee was avoidable, he would have chosen some other method to make his rent payment.

## II.    PLAINTIFF'S CLAIMS SOUNDING IN FRAUD ARE ALLEGED WITH SPECIFICITY

50.    Defendant is in the best position to know what content it placed on its platform during the relevant timeframe, and the knowledge it had regarding the Transaction Fee and related disclosures, to the extent necessary, Plaintiff satisfies the pleading requirements for claims sounding in fraud by alleging the following facts with particularity:

51.    **WHO**: Defendant unlawfully, unfairly, deceptively and/or misleadingly imposed the Transaction Fee on consumers paying their rent.

CLASS ACTION COMPLAINT

52. **WHAT**: Defendant's conduct was, and continues to be, fraudulent because it hid, concealed, obfuscated or otherwise disguised additional charges to consumers paying their rent. Defendant's conduct deceived Plaintiff and Class members into believing that the Transaction Fee is mandatory when paying their rent, when in reality the Transaction Fee is untimely disclosed, misleadingly disclosed, excessive and unlawfully charged. At all times relevant to this action, Plaintiff and Class members utilized Defendant's platform to make rental payments where Defendant then imposed the Transaction Fee. Defendant charged the Transaction Fee to all consumers paying their rent using a one-time electronic payment method. Defendant failed to post, display or otherwise adequately disclose the Transaction Fee to consumers during the signing of their lease agreements or during the rental payment process. Defendant knew, or should have known, that it failed to adequately disclose the Transaction Fee and that this fee is material to reasonable consumers, including Plaintiff and Class members. The Transaction Fee is a sham, a classic "junk fee." Any "service" purportedly provided by Defendant, which is allowing consumers to pay for their rent, is a core part of the aspect of the service Defendant is required to provide. The Transaction Fee is merely a second payment— in the form of a junk fee—for the convenience that consumers are already paying for.

53. **WHEN**: Defendant engaged in these unlawful, unfair, deceptive or otherwise misleading practices during the putative Class periods and at the time Plaintiff and Class members signed their lease agreements and made rental payments through Defendant's platform, prior to and at the time Plaintiff and Class members made claims after realizing the unlawful junk fee, and continuously throughout the applicable Class periods.

54. **WHERE**: Defendant's unlawful, unfair and deceptive junk fee was uniformly applied to consumers who made rental payments through Defendant's platform. Defendant's website, advertising and other marketing materials similarly failed to explain or otherwise disclose the Transaction Fee being charged.

55. **HOW**: Defendant hid, obfuscated or otherwise concealed from consumers the imposition of the Transaction Fee by describing the junk fee as an "Transaction Fee" in order to prevent consumers from discovering the additional charges. Even if consumers were to discover the

CLASS ACTION COMPLAINT

Transaction Fee through their own investigation, Defendant failed to explain or adequately disclose the nature of the Transaction Fee or reasonable alternatives to paying this fee, or why it was imposed.

56.     **WHY**: Defendant engages in its unlawful, unfair and deceptive junk fee scheme in order to induce Plaintiff, Class members and all reasonable consumers to pay the undisclosed and unlawful Transaction Fee, resulting significant revenues for Defendant.

57.     **INJURY**: Plaintiff and Class members paid a premium or otherwise paid more for their rent when they otherwise would not have absent Defendant's misrepresentations.

**III.     TOLLING AND ESTOPPLE OF STATUTE OF LIMITATIONS**

58.     For years Defendant had actual knowledge that it hid, obfuscated or otherwise concealed from consumers the imposition of the Transaction Fee by describing the junk fee as an "Transaction Fee" in order to prevent consumers from discovering the additional charges. Even if consumers were to discover the Transaction Fee through their own investigation, Defendant failed to explain or adequately disclose the nature of the Convenience Fee or reasonable alternatives to paying this fee, or why it was imposed.

59.     Defendant has a duty to accurately disclose the fees it charges to consumers. Yet despite its duty and knowledge, Defendant misrepresented the Transaction Fee, knowing that it had no basis to do so.

60.     Defendant made, and continues to make, affirmative misrepresentations to consumers to continue to profit off the pay-to-pay Transaction Fee scheme.

61.     Defendant misrepresented material facts that are important to Plaintiff and Class members in deciding the manner in which they pay their rent. Defendant's misrepresentations were knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class members.

62.     As a result, Plaintiff and Class members reasonably relied upon Defendant's affirmative misrepresentations of these material facts and suffered injury as a proximate result of that justifiable reliance.

63.     The true extent and nature of the Transaction Fee as a junk fee was not reasonably detectible to Plaintiff and Class members.

CLASS ACTION COMPLAINT

64.     At all times, Defendant actively and intentionally misrepresented the Transaction Fee and failed to inform Plaintiff and Class members of its true nature as well as alternative ways to avoid incurring the Transaction Fee. Plaintiff's and Class members' lack of awareness was thus not attributable to a lack of diligence on their part.

65.     The statements, words and acts by Defendant were made for the purpose of misrepresenting the truth about the Transaction Fee.

66.     Defendant misrepresented the Transaction Fee and alternative means of payment to avoid the Transaction Fee for the purpose of delaying Plaintiff and Class members from filing a complaint on their causes of action.

67.     Due to Defendant's active misrepresentation to Plaintiff and Class members of the true nature of the Transaction Fee and alternative means to pay rent without subjecting them to the Transaction Fee, any and all applicable statutes of limitations that may otherwise be applicable to the allegations are tolled. Moreover, Defendant is estopped from relying on any statute of limitations in light of its active misrepresentation regarding the Transaction Fee.

68.     Furthermore, the causes of action alleged herein did not occur until Plaintiff and Class members discovered the true nature of the Transaction Fee and/or alternative means to avoid the payment of the Transaction Fee. Plaintiff and Class members had no realistic ability to discern that the Transaction Fee was not mandatory or that it was just a junk fee. In either event, Plaintiff and Class members were hampered in their ability to discover their causes of action because of Defendant's active misrepresentation regarding the true nature of its Transaction Fee.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this action on his own behalf and on behalf of all others similarly situated. The proposed class includes:

> During the fullest period allowed by law, all persons who were charged a Transaction Fee by Defendant when making a rent payment (the "Nationwide Class").

70.     Plaintiff further brings this action individually and as a representative of all those similarly situated and the members of the following class:

During the fullest period allowed by law, all persons who were charged a Transaction Fee by Defendant in the State of California when making a rent payment (the "California Subclass").

71.     The Nationwide Class and California Subclass are collectively referred herein as the "Class."

72.     Excluded from the Class are Defendant, its subsidiaries and affiliates, officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned and the members of their immediate families.

73.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

74.     **Numerosity.** The proposed Class is numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. The proposed Class is also sufficiently ascertainable because Defendant has the administrative capability through its computer systems and other business records to identify all members of the proposed Class, and such specific information is not otherwise available to Plaintiff.

75.     **Commonality.** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because Defendant acted on grounds generally applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

a.     Whether Defendant's Transaction Fee was unfair, unlawful, deceptive or misleading;

b.     Whether Defendant's Transaction Fee constitutes violations of the laws asserted;

c.     Whether Plaintiff and the Class were harmed by Defendant's alleged misconduct;

d.     Whether Defendant was unjustly enriched;

e.      Whether Defendant tortiously interfered with Class members' lease agreements;

f.      Whether Plaintiff and the Class are damaged and if so, the proper measure of damages; and

g.      Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

76.     **Typicality.** Plaintiff's claims are typical of the claims of the other proposed Class members in that they arise out of the same wrongful business practice by Defendant, as described herein.

77.     Plaintiff is a more than adequate representative of the proposed Class in that he has suffered damages because of Defendant's improper business practices. Additionally:

a.      Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and retained competent counsel experienced in the prosecution of consumer class actions;

b.      There is no conflict of interest between Plaintiff and the unnamed Class members;

c.      Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d.      Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

78.     **Predominance & Superiority.** Common questions of fact or law concerning Defendant's liability to all Class members for charging Transaction Fees on rent payments predominate over any questions affecting only individual Class members. A class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual Class members' damages are relatively small. Class treatment also permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress

15

CLASS ACTION COMPLAINT

on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

79. **Final Declaratory or Injunctive Relief.** Defendant acted or refused to act on grounds generally applicable to each member of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

80. **Particular Issues.** Plaintiff's claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**California's Unfair Competition Law (the "UCL")**
**Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.***
*(By Plaintiff, individually, and on behalf of the Nationwide Class; Alternatively, on behalf pf the California Subclass)*

81. Plaintiff, individually, and on behalf of the Nationwide Class and in the alternative the California Subclass, realleges and incorporates paragraphs 1 through 80 as if fully set forth herein.

82. California Business & Professions Code §§ 17200, *et seq*., prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

83. Defendant's conduct related to charging Transaction Fees on rent payments violates each of the statute's "unfair," "unlawful" and "fraudulent" prongs.

84. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

85. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and

16

CLASS ACTION COMPLAINT

that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

86.    A business act is "fraudulent" under the UCL if it is likely to deceive the public.

87.    A business act is "unlawful" under the UCL if it violates any other law or regulation.

88.    Defendant commits unfair business acts and practices by charging junk "Transaction Fees" which serve no legitimate purpose except profit to Defendant at the expense of consumers.

89.    Defendant's acts and practices offend an established public policy in the marketplace and constitute immoral, unethical, oppressive and unscrupulous activities that are substantially injurious to consumers.

90.    The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

91.    Defendant's conduct also constitutes an unlawful business practice in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, because, as alleged herein, it also constitutes a violation of sections 1770(a)(5) and (a)(29) of the CLRA, Cal. Civ. Code sections 1750, *et seq.*

92.    Defendant commits fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, by charging fees that provide no added value to consumers, representing that the fees are mandatory without adequately and transparently disclosing payment options to avoid the fees. The financial harm to consumers because of Defendant's wrongful business practice is substantial.

93.    Defendant's business practices have misled Plaintiff and the Class and unless enjoined, will continue to mislead them in the future.

94.    Plaintiff relied on Defendant's misrepresentations in making his rent payment. Had he known that he would be charged a useless Transaction Fee for making rent payments, or that the Transaction Fee was avoidable, he would have chosen some other method to make payment.

95.    As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class suffered and will continue to suffer actual harm.

CLASS ACTION COMPLAINT

96.     Plaintiff and the Class are entitled to restitution of all funds wrongfully obtained by Defendant through its unlawful, fraudulent and unfair business practices as described herein.

97.     Defendant's wrongful conduct is ongoing and is part of a pattern of generalized course of conduct repeated on thousands of occasions yearly.

98.     Plaintiff may be subject to the same wrongful conduct in the future unless Defendant is enjoined. Plaintiff has no adequate remedy at law, in part, because Defendant continues to automatically add Transaction Fees to rent payments made on its platform. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff therefore seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the unfair, fraudulent and unlawful business practices described above, or any other act prohibited by law.

99.     Additionally, Plaintiff and the Class seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**SECOND CAUSE OF ACTION**
**California's Consumers Legal Remedies Act (the "CLRA")**
**Violation of Cal. Civ. Code §§ 1750, *et seq.***
***(By Plaintiff, individually, and on behalf of the Nationwide Class; Alternatively on behalf of the California Subclass)***
***(for injunctive relief only)***

100.    Plaintiff, individually, and on behalf of the Nationwide Class and in the alternative, the California Subclass, realleges and incorporates paragraphs 1 through 80 as if fully set forth herein.

101.    Plaintiff and each member of the Class are "consumers" as defined by Cal. Civ. Code section 1761(d). Defendant's assessment of Transaction Fees on consumers' rent payments are "transactions" within the meaning of Cal. Civ. Code section 1761(e). Defendant's rent payment processing service utilized by Plaintiff and the Class are "services" within the meaning of Cal. Civ. Code section 1761(b).

102.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, rent payment services:

    a.     "Misrepresenting the affiliation, connection or association with, or certification by, another" (a)(3);

b. "Representing that. . . services have . . . characteristics . . . that they do not have" (a)(5);

c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

d. "Representing that a transaction confers or involves rights, remedies or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

f. "Advertising, displaying, or offering a price for a . . . service that does not include all mandatory fees or charges" (a)(29).

103.   Specifically, Defendant charged fees that provided no added value to reasonable consumers, misrepresented the mandatory nature of the fees and misrepresented the total cost of Plaintiff's and Class members' rent obligations.

104.   Pursuant to section 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of section 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter and/or fails to agree to rectify the problems associated with the actions detailed above, Plaintiff will amend this cause of action to seek actual and statutory damages, as appropriate, against Defendant. At this time as to this cause of action, Plaintiff seeks only public injunctive relief as described above.

19

CLASS ACTION COMPLAINT

105. Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint.

### THIRD CAUSE OF ACTION
**Tortious Interference with Contract**
*(By Plaintiff, individually, and on behalf of the Nationwide Class, Alternatively on behalf of the California Subclass)*

106. Plaintiff, individually, and on behalf of the Nationwide Class, realleges and incorporates paragraphs 1 through 80 as if fully set forth herein.

107. Plaintiff and members of the Nationwide Class entered into valid lease agreements with rental property management companies and landlords based on their economic necessity for rental housing services. Defendant knew or should have known about this business relationship when it acted as the third-party platform through which Plaintiff and Nationwide Class members were required to make monthly rental payments to those rental property management companies and landlords.

108. Defendant intentionally and/or wrongfully interfered with those lease agreements to Plaintiff's and Nationwide Class members' detriment by charging Transaction Fees which amounted to undisclosed rent costs.

109. Defendant's act of charging Transaction Fees on Plaintiff's and Nationwide Class members' rent payments was designed to induce and did induce breach and/or disruption of their contractual relationship with those entities.

110. Defendant's intentional interference caused Plaintiff and members of the Nationwide Class actual harm in the form of the wrongfully collected Transaction Fees.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment**
*(By Plaintiff, individually, and on behalf of the Nationwide Class)*

111. Plaintiff, individually, and on behalf of the Nationwide Class, realleges and incorporates paragraphs 1 through 80 as if fully set forth herein.

112. To the detriment of Plaintiff and the Nationwide Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

CLASS ACTION COMPLAINT

113.    Plaintiff and the Nationwide Class conferred a benefit on Defendant.

114.    Defendant unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

115.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

116.    Plaintiff and the Nationwide Class, therefore, seek disgorgement of all wrongfully obtained Transaction Fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

a.    Certifying the proposed Class(es), appointing Plaintiff as representative of the Class(es) and appointing Plaintiff's counsel as class counsel;

b.    Declaring that Defendant's Transaction Fee policies and practices described herein are improper;

c.    Enjoining the wrongful conduct as described herein on behalf of the general public;

d.    For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth herein;

e.    Awarding actual damages and statutory damages in an amount according to proof;

f.    Awarding treble damages to the extent permitted by law;

g.    Awarding pre-judgment interest at the maximum rate permitted by law;

h.    Reimbursing all costs, expenses and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs and expenses, pursuant to applicable law and any other basis; and

i.    Awarding such other relief as this Court deems just and proper.

///

///

///

///

21

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: March 5, 2026

Respectfully submitted,

**KALIELGOLD PLLC**

By: _Sophia Goren Gold_

Sophia G. Gold
Amanda J. Rosenberg
arosenberg@kalielgold.com

Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

**PEARSON WARSHAW, LLP**
Melissa S. Weiner (MN Bar No. 0387900)*
Ryan T. Gott (MN Bar No. 0397978)*
328 Barry Avenue S., Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com
rgott@pwfirm.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT

# EXHIBIT 1



Office of the Director
Bureau of Consumer Protection

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

December 8, 2025

<u>Via E-Mail</u>

[NAME]
[ADDRESS]

Re: Deceptive or Unfair Acts or Practices Relating to the Marketing or Advertising of Residential Rental Units

Dear [NAME]:

The Federal Trade Commission ("FTC" or "Commission") is a federal agency whose mission is to protect Americans from unfair, deceptive, and anticompetitive business practices, without unduly burdening legitimate business activity. As part of that mission, we work to educate businesses about their rights and responsibilities, and where necessary, initiate investigations and enforcement actions.

The FTC is committed to rooting out anticompetitive, unfair and deceptive acts or practices in the rental housing market.[1] Consumers who search for potential rental housing units cannot meaningfully compare alternative choices without understanding the total price required to rent the advertised properties. When consumers do not know the total price of the advertised properties—or any product—they cannot make informed decisions, and the market cannot operate as efficiently as it otherwise would. And unfair and deceptive acts in the rental housing market in a time when hard-working Americans continue to suffer the effects of the Biden Administration's cost-of-living crisis are especially harmful to consumers and markets.[2]

---

[1] *See, e.g.*, Press Release, FTC, FTC Sues Zillow and Redfin Over Illegal Agreement to Suppress Rental Advertising Competition (Sep. 30, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-sues-zillow-redfin-over-illegal-agreement-suppress-rental-advertising-competition; Press Release, FTC, State of Colorado Take Action Against Greystar, Nation's Largest Multi-Family Rental Property Manager, for Deceiving Consumers About Rent Prices (Jan. 16, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/01/ftc-state-colorado-take-action-against-greystar-nations-largest-multi-family-rental-property-manager; Press Release, FTC, FTC Takes Action Against Invitation Homes for Deceiving Renters, Charging Junk Fees, Withholding Security Deposits, and Employing Unfair Eviction Practices (Sep. 24, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/09/ftc-takes-action-against-invitation-homes-deceiving-renters-charging-junk-fees-withholding-security.

[2] See Concurring Statement of Chairman Andrew N. Ferguson, *FTC v. Greystar Real Estate Partners*, Matter No. X250023 (Dec. 2, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/2025.12.02-greystar-chairman-ferguson-statement.pdf; see Presidential Mem., *Delivering Emergency Price Relief for American Families and Defeating the*

Available information suggests that property management software providers are limiting the ability of rental property managers and owners to accurately advertise the total monthly rental price, inclusive of all mandatory fees. Property management software programs may cause consumer harm and harm to competition in the rental housing market when they do not accurately display complete pricing information across websites hosted on their platforms, or where they restrict property owners' and managers' ability to aggregate or convey accurate cost information to consumers on third-party listing sites.

The FTC has authority under Section 5 of the FTC Act, 15 U.S.C. § 45(a), to investigate unfair or deceptive acts or practices in or affecting commerce.[3] In addition, the Gramm-Leach-Bliley Act, 15 U.S.C. § 6821(a)(2), makes it illegal to use false, fraudulent, or fictitious statements or representations to obtain, attempt to obtain, cause the disclosure of, or attempt to cause the disclosure of customer information of a financial institution.

Violations of the FTC Act and the Gramm-Leach-Bliley Act may be subject to legal action and federal district court injunctions. In addition, companies or individuals that violate the Gramm-Leach-Bliley Act may be subject to civil penalties of up to $53,088 per violation pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), and may be required to pay refunds to consumers or provide other relief pursuant to Section 19(b), 15 U.S.C. § 57b(b).

Recently, the FTC has pursued law enforcement actions to protect Americans from deceptive acts and practices in the rental housing market, in violation of the FTC Act and the Gramm-Leach-Bliley Act, including in:

- *FTC v. Invitation Homes*, N.D. Ga. No. 1:24-cv-04280: The FTC alleged that Invitation Homes, the largest single family home owner in the country, violated Section 5 of the FTC Act by, among other things, misrepresenting the total cost of renting homes by excluding mandatory monthly fees from the advertised price, failing to disclose all mandatory monthly fees consumers must pay to rent a home, and misrepresenting deductions against security deposits. The FTC further alleged that Invitation Homes violated the Gramm-Leach-Bliley Act by falsely representing the price of a rental home and thereby obtaining or attempting to obtain customer information of a financial institution. Invitation Homes was ordered to pay $48 million to the Commission for consumer redress.

- *FTC, et al, v. Greystar Real Estate Partners, LLC, et al*, D. Colo. No. 1:25-cv-00165: The FTC alleged that Greystar, the largest residential rental property owner and manager in the United States, violated Section 5 of the FTC Act by misrepresenting the true cost of renting an apartment, by excluding mandatory, fixed fees from the advertised rental price. The FTC further alleged that Greystar violated the Gramm-Leach-Bliley Act by using these false representations to induce consumers to provide their credit card or bank account information to pay nonrefundable application fees, thereby causing the disclosure

---

*Cost-of-Living Crisis* (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/delivering-emergency-price-relief-for-american-families-and-defeating-the-cost-of-living-crisis/.

[3] An act or practice is deceptive if there is a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances. *See, e.g.*, *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001).

of customer information of financial institutions. Greystar was ordered to pay $23 million to the Commission for consumer redress and $1 million to the State of Colorado.

Accordingly, I encourage you to conduct a comprehensive review of your practices, including your website hosting platforms and any software or coding controlling the flow of information from your software to internet listing sites, to ensure that you comply with applicable laws and do not impede the ability of property owners and managers to provide consumers with transparent rental prices. If your company is currently engaged in acts or practices that could be in violation of the FTC Act or other rules and statutes enforced by the FTC, I strongly encourage you to discontinue the practices immediately and to notify relevant employees of the discontinuance. Doing so could help ameliorate the detrimental effects of the Biden Administration's cost-of-living crisis currently suffered by American consumers and rental markets.

This letter is not intended to be a comprehensive statement of concerns that may exist in connection with property management software providers. Additionally, please note that I am distributing similar notifications to other property management software providers, and your receipt of this letter is not intended to suggest that you have engaged in illegal conduct. As always, it is your company's responsibility to comply with all requirements of federal law, including Section 5 of the FTC Act, the Gramm-Leach-Bliley Act, and other laws and rules enforced by the Commission. We are monitoring the marketplace for potentially deceptive or unfair acts or practices relating to the marketing and advertising of rental housing and will take additional action as warranted.

Copies of the cases discussed in this letter are available on the Commission's website at www.ftc.gov. The Commission's website has other important resources designed to ensure that business know their responsibilities under the FTC Act and other laws and rules enforced by the Commission. *See, e.g.*, https://www.ftc.gov/business-guidance/advertising-marketing/advertising-marketing-basics.

Thank you for your attention to this matter. Please direct any inquiries concerning this letter to Katherine White at kwhite@ftc.gov, including any requests to meet with FTC staff regarding its subject matter.

Sincerely,

_____
Christopher Mufarrige
Director
Bureau of Consumer Protection

3

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td></td><td><b>FOR COURT USE ONLY</b><br><i>(SOLO PARA USO DE LA CORTE)</i></td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
IAN COMFORT, on behalf of himself and all others similarly situated

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
APPFOLIO, INC.,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court

400 McAllister Street, San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*

**CGC-26-634729**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sophia G. Gold, KalielGold PLLC, 490 43rd Street, No. 122, Oakland, CA 94609 (202) 350-4783; sgold@kalielgold.com

DATE:
*(Fecha)* **03/13/2026**

Clerk, by
*(Secretario)* _____ **DAEJA ROGERS** _____

, Deputy
*(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*



[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]  [ Save this form ]  [ Clear this form ]